**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

<table>
<tr><td>

**UNITED STATES OF AMERICA,**

v.

**CHRISTOPHER MONTALVO-
FLORES.**

</td><td>

Crim. No. 20-80

**OPINION**

</td></tr>
</table>

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter arises out of a criminal complaint filed against defendant Christopher-Montalvo-Flores ("Defendant") for a drug-related offense. The matter comes before the Court on Defendant's motion (the "Motion") to suppress and compel discovery. ECF No. 21. For the reasons set forth below, Defendant's Motion is **DENIED**.

## I.      BACKGROUND

Defendant is charged with possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). ECF No. 10. On November 6, 2019, law enforcement officers responded to the Holiday Inn on Route 1&9 in Newark, New Jersey to serve an arrest warrant on Defendant issued by the Commonwealth of Pennsylvania in connection with the robbery of over approximately $300,000.00 from an armored truck allegedly committed by Defendant and two other individuals. April 5, 2021 Suppression Hr'g Tr. at 9:18-10:20 ("Hr'g Tr."). Officers arrived at the Holiday Inn at approximately 12:30 p.m. and began to set up a perimeter around the hotel and speak with hotel staff. *Id.* at 13:3-12, 33:21-23. Shortly thereafter, the officers proceeded to Defendant's room on the fifth floor of the hotel, knocked on the door, and announced themselves as police. *Id.* at 13:22-14:5. Defendant opened the door and was immediately placed under arrest. *Id.* at 14:5-21. At the time of Defendant's arrest, one of the three suspects from the armored truck robbery for whom an arrest warrant was issued remained at-large. *Id.* at 10:21-11:1.

Upon placing Defendant under arrest, the officers conducted two preliminary searches: (1) a search of Defendant incident to his arrest; and (2) a protective sweep of Defendant's hotel room. *Id.* at 15:18-20, 20:11-13. According to the Government, in searching Defendant incident to his arrest, the arresting officers recovered a cell phone, US currency, and car keys to an Infiniti car. Opp'n at 2, 5-6; Hr'g Tr. at 20:11-17. In addition, the Government contends that because a suspect for the armored truck robbery in Pennsylvania was still at large at the time of Defendant's arrest, officers were entitled to conduct a protective sweep of the hotel room, during which officers located in plain view four new iPhones in their original packaging in an open suitcase as well as $2,600.00 in US currency in an open black and white Gucci shopping bag. Opp'n at 4-5; Hr'g Tr. at

10:21-11:1, 17:12-20:10, 30:22-31:18. The Defendant contests the Government's account and claims that (1) the keys to the Infiniti car were located in a tissue box rather than on Defendant's person; and (2) there was no reason for the officers to believe that another individual was inside the hotel room at the time of Defendant's arrest to warrant a protective sweep thereof and that, in any event, some of the items recovered during the sweep were not in plain view but were instead recovered only after an illegal search of Defendant's suitcase. Mot. at 6-7; Hr'g Tr. at 73:22-77:14.

After recovering the Infiniti car keys and conducting a sweep of the hotel room, the officers proceeded to exit the hotel and use the buttons on the car keys to locate the vehicle to which the recovered keys belonged. Hr'g Tr. at 22:13-15, 28:7-13. The officers ran the license plates to the vehicle and discovered that the registered owner thereof was Enterprise Rental Car Service ("Enterprise"). *Id.* at 22:13-25. The arresting officer then called Enterprise and explained to a regional risk management officer with the company that the keys to the rental car were found in Defendant's possession and that Defendant was being placed under arrest. *Id.* at 23:1-8, 24:2-25:3, 50:9-54:9. During that conversation, the officers learned that the vehicle was rented to a Jennifer C. Pisciotta[1] and that Defendant was not an authorized driver under the applicable rental agreement and obtained Enterprise's consent to search the vehicle. *Id.* at 24:14-25:15. Upon conducting a search of the vehicle, officers uncovered another black and white Gucci bag containing three bags of suspected crack cocaine. *Id.* at 25:19-26:17. The Government contends that during this time Defendant remained silent and did not object to a search of the vehicle. Opp'n at 8-9. Defendant again contests the Government's account and claims that he did verbally object to a search of the car. Mot. at 9.

On April 5, 2021, the Court held a hearing on Defendant's Motion and heard testimony from one witness: Detective Abdullah Holmes, who was the officer that arrested Defendant, conducted the protective sweep of his hotel room, and who had obtained Enterprise's consent to search the vehicle.

## II.    DISCUSSION

Defendant moves to suppress (1) the US currency and iPhones recovered from the search of the hotel room after Defendant's arrest; (2) the keys to the rental car's arrest; and (3) the evidence recovered from the search of the rental car, including the bags of crack cocaine. The Court addresses each request in turn.

### A. US Currency and iPhones Recovered in the Hotel Room

Defendant seeks to suppress any evidence obtained from the hotel room during the protective sweep. Specifically, Defendant argues that (1) there was no reason for the officers to engage in a protective sweep of the hotel room, and (2) the evidence recovered during that protective sweep was not in 'plain view' and therefore illegally seized.

---

[1] Defendant states that Pisciotta was his girlfriend at the time.

### 1.  Protective Sweep of the Hotel Room

Incident to an arrest, "as a precautionary matter and without probable cause or reasonable suspicion, [officers may] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."  *Maryland v. Buie*, 494 U.S. 325, 334 (1990).  "Beyond that, . . . there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Id.*  Evidence found in plain view during a protective sweep may be seized.  *See Horton v. California*, 496 U.S. 128, 135 (1990).

Here, the uncontested facts justify a protective sweep of the hotel room. Detective Holmes testified that at the time of Defendant's arrest, there was still a suspect in the armored truck robbery at-large whose whereabouts were unknown. Hr'g Tr. at 10:21-11:1. As such, the arresting officers had reasonable and articulable suspicion that the hotel room harbored a dangerous individual, justifying the sweep. *See Buie*, 494 U.S. at 334. In so doing, the officers were permitted to search the area "from which an attack could be immediately launched." *Id.*  Thus, evidence located in "plain view" during the sweep need-not be suppressed.

### 2.  The Plain View Doctrine

Under the plain view exception, police officers may seize incriminating evidence without a warrant during the course of a lawful search "because such a seizure 'does not involve an intrusion of privacy.'" *United States v. Muhammad*, Crim. No. 14-cr-136(JBS), 2016 WL 8679261, at *7 (D.N.J. Mar. 18, 2016) (quoting *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994)). For the plain view exception to apply, the Government must show that: (1) the officers were lawfully in the position from which evidence could be seen, (2) the incriminating character of the evidence was "immediately apparent," and (3) the officers had a lawful right of access to the evidence.  *See United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011). The second prong does not require "near certainty" that the items are contraband, only "probable cause to associate the property with criminal activity." *Texas v. Brown*, 460 U.S. 730, 741 (1983) (cleaned up).

Here, all three elements are satisfied. First, as noted, the arresting officers were lawfully in Defendant's hotel room conducting a protective sweep of the area. *See United States v. Gatson*, Crim. No. 13-705, 2014 WL 7182275, at *16 (D.N.J. Dec. 26, 2014) ("[T]he plain view exception applies to evidence observed in plain view during a protective sweep."). Second, Detective Holmes testified that during the protective sweep of the hotel room he saw in plain view an open Gucci bag containing US currency that he had reason to believe was tied to the armored truck robbery for which Defendant's arrest warrant was issued. Hr'g Tr. at 17:12-18:18; Gov. Ex. 4. In addition, Detective Holmes testified that he also saw in plain view an open suitcase containing new iPhones in their original packaging that, based on similar evidence recovered by Detective Holmes in a prior arrest of one of Defendant's alleged co-conspirators in the armored truck robbery, he reasonably believed

were proceeds of a robbery of the mall in Short Hills, New Jersey. Hr'g Tr. at 20:2-10, 43:22-45:10; Def. Ex. 1.

Finally, the officers had a lawful right of access to the currency and phones because they were in open bags and suitcases that were visible and readily observed while the officers conducted their protective sweep of Defendant's hotel room. Although Defendant's counsel argued at the suppression hearing that only two of the four iPhones recovered were in plain view and that the other two iPhones were only seized by Detective Holmes after he illegally searched through Defendant's suitcase to find them, the testimony provided at the suppression hearing does not support this version of events. Specifically, Detective Holmes testified that he only saw two iPhones initially, but upon seizing them based on his reasonable belief that they were proceeds of the robbery of a mall in Short Hills, New Jersey saw the remaining two phones. Hr'g Tr. at 43:22-45:10. The Court finds Detective Holmes's testimony credible, and therefore concludes that the recovery of the four iPhones was not the result of an illegal search. Accordingly, the iPhones and U.S. currency found during the sweep are admissible.

## B. The Rental Car Keys

Defendant also seeks to suppress the keys to the Infiniti rental car because he claims that the keys were hidden in a tissue box and were therefore neither in plain view nor recovered in the search of his person incident to his arrest. When placing an individual under arrest, the arresting officer is permitted to conduct a limited search of the arrestee's person and "the area within his immediate control." *Chimel v. California*, 395 U.S. 752, 763 (1969). This includes a search of an arrestee's pockets. *Meleika v. Bayonne Police Dep't*, Civ. No. 17-1958 (KM) (MAH), 2020 WL 2214584, at *5 (D.N.J. May 7, 2020). Here, Detective Holmes testified that he found the keys to the rental vehicle in Defendant's pocket during a search of his person incident to his arrest. Hr'g Tr. at 20:11-17, 62:8-14. The Court finds Detective Holmes' testimony to be credible, and, as such, concludes that the rental car key were recovered following a lawful search of Defendant incident to his arrest and should not be suppressed.

## C. The Rental Car

Finally, Defendant moves to suppress all evidence recovered from the warrantless search of the Infiniti rental vehicle. Specifically, Defendant asserts that he had a reasonable expectation of privacy in the rental car, that he objected to the search of the vehicle, and that Enterprise's consent to search the vehicle was invalid. Whether the evidence recovered from the rental car ought to be suppressed comes down to two primary questions: (1) did Defendant have a legitimate expectation of privacy in the vehicle, and (2) if so, whether Enterprise had the authority to consent to a search of the vehicle. The Court addresses each issue in turn.

### 1. Reasonable Expectation of Privacy

For a defendant to have standing to object to a police search as violative of their Fourth Amendment rights, the defendant must have a "legitimate expectation of privacy in

the premises searched." *Byrd v. United States*, 138 S. Ct. 1518, 1526 (2018) (citation omitted). Although there is no concrete list of examples, scenarios, or considerations in which a person may have a reasonable expectation of privacy, the concept is strongly related to those found in real or personal property law. *Id.* at 1527. Thus, generally speaking, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Id.* With respect to the warrantless search of an automobile, whether an individual has "the reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-bound question dependent on the strength of his interest in the car and the nature of his control over it; ownership is not necessary." *United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000).

Until recently, the analysis in a case such as this was straightforward in the Third Circuit – barring some "extraordinary circumstances suggesting an expectation of privacy," an individual who was not listed as an authorized driver on the rental agreement lacks a reasonable expectation of privacy in the rental vehicle. *United States v. Kennedy*, 638 F.3d 159, 165 (3d Cir. 2011). This rule, however, was abrogated by the Supreme Court in *Byrd*, which held that the mere fact that the driver and sole occupant of a rental car was not listed as an authorized driver on the applicable rental agreement was insufficient standing alone to defeat a Fourth Amendment interest therein. *Byrd*, 138 S. Ct. at 1531. *Byrd*, however, is only the beginning of the Court's analysis, not the end, both because it leaves open the question of what additional facts, or lack thereof, would be sufficient to defeat one's legitimate expectation of privacy in a rental vehicle and because its facts are substantially different than those in the instant case.

The defendant in *Byrd* had been the subject of a traffic stop while driving a vehicle that was rented by his girlfriend, during which the law enforcement officers conducted a warrantless search of the vehicle and found heroin in the trunk. *Id.* at 1524-25. Although his girlfriend had given him the keys and allowed him to drive the vehicle, the defendant in *Byrd* was not listed as an authorized driver on the rental agreement. In concluding that this fact, on its own, did not defeat an otherwise reasonable expectation of privacy in the vehicle, the Supreme Court emphasized that, as the driver and sole occupant of the car, the defendant "had complete dominion and control" over the car and "could exclude others from it." *Id.* at 1528.

Here, by contrast, Defendant was never observed possessing, operating, or otherwise exercising any sort of control over the rental vehicle aside from possessing the keys thereto. Although Detective Holmes testified that other detectives had apparently seen his girlfriend exchange the car and car keys with Defendant, Detective Holmes was not able to testify as to when or where that observation was made, or if detectives subsequently observed Defendant operating or exercising control over the vehicle prior to his arrest. Hr'g Tr. at 54:10-14, 55:15-56:11. Because Defendant was neither the driver nor the occupant of the vehicle at the time of his arrest, and was never observed as such prior to his arrest, there appears to be little evidence that Defendant had any such "dominion and control" over the vehicle sufficient to confer a Fourth Amendment interest therein. The Court

declines to hold that the mere possession of keys to a vehicle is sufficient, standing alone, to create a reasonable expectation of privacy in a vehicle owned by and rented to third parties.

Indeed, even if Defendant had been seen operating the vehicle, his possession and control thereof would not have been lawful and therefore could not have created a legitimate Fourth Amendment interest therein. Detective Holmes testified that at the time of his arrest, Defendant did not have a valid driver's license. Hr'g Tr. at 11:23-25, 12:16-18. Because operating a vehicle without a valid license is a violation of New Jersey state law, N.J.S.A. § 39:3-10, Defendant could not have had lawful possession or control of the rental car, regardless of his girlfriend's consent to use the car. *See United States v. Lyle*, 919 F.3d 716, 730 (2d Cir. 2019).

Accordingly, the Court finds that Defendant did not have a reasonable expectation of privacy in the car and therefore does not have standing to challenge the warrantless search of the vehicle.

### 2.  Consent to Search the Rental Car

Because the Court has concluded that Defendant did not have a reasonable expectation of privacy in the rental car, it need not determine whether Defendant objected to a search thereof nor consider whether Enterprise's consent with respect to such a search was valid.

### III.   CONCLUSION

For the reasons set forth above, Defendant's Motion is **DENIED**. An appropriate Order follows.


                                               /s/ *William J. Martini*

**Date: April 22, 2021**                         **WILLIAM J. MARTINI, U.S.D.J.**